## Schwab v. Bates

*Terrence R. Nealon,* for plaintiff.
*David L. Haber,* for defendant.

CARUSO, *J.,* August 5, 1991—This matter is before the court as the result of preliminary objections filed on behalf of the defendant. The objections are in the nature of a motion to strike and a demurrer.

The present action arises out of an automobile accident that occurred on or about January 15, 1990. It is alleged that the defendant's decedent was intoxicated at the time of the accident. The plaintiff now seeks to recover not only compensatory damages but punitive damages and attorney fees as well. It is to the request for such damages and fees that the defendant now raises objection. At the oral argument of the preliminary objections, counsel for the plaintiff has conceded that attorney's fees are not a proper claim and has agreed to amend the demand for relief to remove that claim.

The remaining issue before this court for determination is one that has not yet been decided by the appellate courts of our Commonwealth. The issue is whether or not a plaintiff can recover punitive damages from the estate of a deceased tort-feasor. The legislature of Pennsylvania has provided that all causes of action or proceedings against a tort-feasor survive the death of the tort-feasor. 42 Pa.C.S. §8302 and 20 Pa.C.S. §3371. Given these statutory provisions, the courts of Pennsylvania have long recognized that a decedent's estate may pursue a cause of action for punitive damages. The question remains, should the converse hold true? There is no question that the survival statute in Pennsylvania has been interpreted to allow the recovery of punitive damages after the death of a party. As indicated, the courts have allowed recovery by the estate of a deceased plaintiff. Therefore, recovery of such damages against the estate of a deceased defendant should be permitted if there are sound policy reasons to do so.

In Pennsylvania, punitive damages are to be awarded to punish a party for certain outrageous conduct and to deter him *or others* from similar conduct. *Kirkbride v. Lisbon Contractors Inc.,* 521

Pa. 97, 555 A.2d 800 (1989); *Schecter v. Watkins,* 395 Pa. Super. 363, 577 A.2d 585 (1990). Obviously, the death of the tort-feasor eliminates the opportunity to punish or to deter that person from similar conduct in the future.

Several other jurisdictions have considered the question. Among those that have, the following are in the majority and have declined to allow the award of punitive damages against an estate. *Doe v. Colligan,* 753 P.2d 144 (Alaska 1988); *Hayes v. Gill,* 390 S.W.2d 213 (Tenn. 1965); *Wolder v. Rahm,* 249 N.W.2d 630 (Iowa 1977); *Holm Timber Industries v. Plywood Corp. of America,* 242 Cal. App. 2d 492 (1966); *Thompson v. Estate of Pelroff,* 319 N.W.2d 400 (Minn. 1982); *Allen v. Anderson,* 562 P.2d 487 (Nev. 1977); and *Dalton v. Johnson,* 129 S.E.2d 647 (Va. 1963). Most of the cases cited by the defendant that do not allow the recovery have done so because they either do not have survival statutes similar to Pennsylvania or have a punitive damage rule that does not include the deterrence of others as a stated purpose for the assessment of punitive damages. These courts reasoned that if the only purpose is to punish the tort-feasor, then this purpose could not be achieved after the death of the tort-feasor and thus the imposition of punitive damages would be rendered meaningless. The states that have allowed recovery such as Texas, *Hoffer v. Lavender,* 679 S.W.2d 470 (1984), Florida, *Stephens v. Rhodes,* 478 So.2d 862 (1985), and West Virginia, *Perry v. Melton,* 299 S.E.2d 8 (1982), do have survival statutes similar to Pennsylvania and have as a stated purpose the deterrence of others.

Also in fairness to the defense, it must be pointed out that at least one of the states that has not allowed such recovery has statutes and stated purposes similar to Pennsylvania. In the case of *Doe v.*

*Colligan, supra,* the Alaskan Supreme Court held that even though Alaska had a statute that allowed a plaintiff's cause of action to survive the death of the tort-feasor and despite the fact that one of the stated purposes for the allowance of punitive damages was deterrence of others, recovery of punitive damages against the estate of the deceased tort-feasor would not be permitted. The court reasoned that:

"The central purpose of punitive damages is to punish the wrongdoer and to deter him from future misconduct. The concomitant goal of general deterrence depends significantly upon the punishment function of an award of punitive damages. Since the deceased tort-feasor cannot be punished, the general deterrence effect becomes speculative at best and thus, in our view, falls short of justifiable ground for an award of punitive damages against the tort-feasor's estate."

The court saw no social benefit to be derived from a rule that would permit the punishment of the estate and the heirs of the deceased tort-feasor. (See footnote 8 of the opinion.) Even in those states which have allowed such recovery, the dissents have seized upon this same theme. For example, Justice Spears of the Supreme Court of Texas, in the case of *Hoffer v. Lavender,* 679 S.W. 2d 470, (Tex. 1984) stated that the court had only succeeded in punishing the innocent heirs of the deceased, a result reminiscent of the feudal doctrine of corruption of blood.

However, the imposition of punitive damages against the estate of a tort-feasor does not actually punish the heirs of the decedent much more than they would be punished if the tort-feasor was still alive. The award of punitive damages against a living tort-feasor would reduce the amount of money available to the family, assuming the award of

punitive damages was not covered by insurance. Certainly, if the tort-feasor was still alive, he or she may be able to help his or her family recover from the financial burden of a punitive damage award. But nevertheless the family of the tort-feasor would feel the initial impact of the award and be punished to the extent that the payment by the tort-feasor reduced the amount of money available to the family.

Furthermore, the only property that would be subject to execution for the payment of a judgment for punitive damages against the estate of a deceased tort-feasor would be that property that actually passed through the estate. Entireties property and survivorship property would not be subject to execution on the damage award. Also, the trial court should take care to limit the evidence to be considered in determining the award of punitive damages to only evidence of assets that truly pass through the estate of the deceased tort-feasor and not any joint assets that pass to the heirs by operation of law.

The courts that have precluded recovery against the estate of the tort-feasor have also stated that since the deceased tort-feasor cannot be punished, the general deterrent effect of the punitive damages award upon others becomes speculative at best. However, that conclusion is based upon a premise that is also speculative. This court believes that it is just as likely, if not more likely, that a person would hesitate to act if they believed that their conduct would injure innocent members of their own family.

In the case at hand, stronger consideration should be given to the effort to deter others, considering that the conduct the court is attempting to deter is driving while intoxicated. As was stated in the case of *Focht v. Rabada,* 217 Pa. Super. 35, 268 A.2d 157 (1970):

"Automobiles represent the most lethal and deadly weapons today entrusted to our citizenry. When automobiles are driven by intoxicated drivers, the possibility of death and serious injury increases substantially. Every licensed driver is aware that driving while under the influence of intoxicating liquor presents a significant and very real danger to others in the area . . . . [I]n certain factual circumstances the risk to others by the drunken driver may be so obvious and the probability that harm will follow so great that outrageous misconduct may be established without reference to motive or intent."

If the court would engage in a balancing test, the court should weigh the possible harm that may be suffered by the family of the deceased defendant against the harm that could be prevented to many innocent families if the conduct of driving while intoxicated is deterred. The choice clearly should be to attempt to deter conduct that, if deterred, will without question save many innocent lives. The increased criminal penalties that the state legislature has passed evidences the public's desire and strong legislative policy of attempting to deter such conduct. Anything that might increase that deterrent effect should be considered. Some may argue that the increased criminal penalties are not having the desired effect of deterring driving while intoxicated and, therefore, it is unrealistic to think that a possible punitive damage award against the estate of a deceased defendant will deter others, particularly when it appears the prospect of criminal prosecution does not. However, this court does not accept this as a reason not to do whatever might be more effective. Is not the fact that the criminal sanctions are not having the desired deterrent effect all the more reason to attempt other methods? Furthermore, the argument that the allowance of such

punitive damages would not have the desired deterrent effect upon others is purely speculative.

Therefore, this court holds that a plaintiff is permitted to seek an award of punitive damages against the estate of a deceased tort-feasor when the conduct that is attempted to be deterred in others is driving while intoxicated. This court specifically is making no determination as to whether or not the same should be allowed with regard to other forms of conduct.

## ORDER

And now, August 5, 1991, in accordance with the foregoing decision, it is hereby ordered and decreed that the preliminary objections of the defendant are denied.

It is further ordered, pursuant to the agreement of plaintiff's counsel, that the claim for counsel fees is to be dismissed.