SARAH ALLEN, APPELLANT, *v.* FREDRICK CARL ANDERSON, NEALE R. RUARK AND JOE FUETSCH, SPECIAL ADMINISTRATOR OF THE ESTATE OF MICHAEL LYNN RUARK, DECEASED, ET AL., RESPONDENTS.

No. 8925

April 7, 1977                                      562 P.2d 487

———

*Peter Chase Neumann* and *Lew Carnahan,* Reno, for Appellant.

*Vargas, Bartlett & Dixon,* Reno, for Respondents Neale R. Ruark and Joe Fuetsch.

*Erickson, Thorpe & Swainston,* Reno, for Respondent Fredrick Carl Anderson.

## OPINION

By the Court, GUNDERSON, J.:

Appellant sought compensatory and punitive damages for personal injuries sustained when the car in which she was a passenger, driven by Michael Ruark, collided with a car driven by respondent Fredrick Anderson. In the accident, Michael

Ruark was killed and Anderson was injured. Appellant's complaint against Anderson, Joe Fuetsch (Special Administrator of Michael Ruark's estate), and Neale Ruark (Michael's father) alleged: (1) Anderson and Michael Ruark, while under the influence of alcohol, negligently and carelessly operated their vehicles in such a manner as to cause them to collide violently, and such negligence was the proximate cause of her injuries; (2) the intentionally dangerous and irresponsible conduct of Anderson and Michael Ruark constituted fraud, oppression, or malice, as contemplated by NRS 42.010, thus, punitive damages were warranted;[1] and, (3) Neale Ruark was liable pursuant to NRS 41.440 for any judgment against his son, Michael.[2]

Two of the defendants, Fuetsch and Ruark, moved, pursuant to NRCP 12, to strike the punitive damage claim. The district judge granted the motion because, he reasoned, the allegations were insufficient and the movants were, as a matter of law, not liable for such damages. An order striking that claim was entered as to all of the defendants who then stipulated to the finality of that order. Accordingly, the district judge, determining there was no just cause for delay, directed a final judgment be entered pursuant to NRCP 54(b), thereby permitting Allen to pursue this appeal.[3]

---

[1]NRS 42.010 provides:

"In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

[2]NRS 41.440 provides:

"Any liabilty imposed upon a wife, husband, son, daughter, father, mother, brother, sister or other immediate member of a family arising out of his or her driving and operating a motor vehicle upon a highway with the permission, express or implied, of such owner is hereby imposed upon the owner of the motor vehicle, and such owner shall be jointly and severally liable with his or her wife, husband, son, daughter, father, mother, brother, sister or other immediate member of a family for any damages proximately resulting from such negligence or willful misconduct, and such negligent or willful misconduct shall be imputed to the owner of the motor vehicle for all purposes of civil damages."

[3]NRCP 54(b) provides, in part:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. . . ."

Allen contends on appeal that the district court erred in striking her claim for punitive damages because its allegations were sufficient to sustain such a claim. However, here we need not, and therefore do not, decide this issue.

1. Neither the estate nor the father of the deceased tortfeasor can here be liable for punitive damages.

On its face, Nevada's broadly phrased survival statute might be read to mandate survival of punitive damage claims, not only following death of the aggrieved party but subsequent to the tortfeasor's death as well. *See* NRS 41.100.[4] However, punitive damages are awarded for "sake of example and by way of punishing the defendant." NRS 42.010. *See* Caple v. Raynel Campers, Inc., 90 Nev. 341, 526 P.2d 334 (1974).

Thus, as might be expected, it is commonly held that punitive damage claims survive the aggrieved party's death, as against a living tortfeasor. *See, for example:* Worrie v. Boze, 96 S.E.2d 799 (Va. 1957); Swartz v. Rosenkrans, 240 P. 333 (Colo. 1925); Wagner v. Gibbs, 31 So. 434 (Miss. 1902). Such tortfeasors, of course, remain susceptible to punishment. As one court has said, in distinguishing a situation involving a deceased injured party from precedents denying punitive damages where the tortfeasors were dead: "[T]he reason for the difference is perfectly manifest. Punitory damages are inflicted for the purpose of deterring a culprit in the future, and the

---

[4]NRS 41.100 provides, in part:

"1. Causes of action, whether suit has been brought upon the same or not, in favor of the injured party for personal injuries other than those resulting in death, whether such injuries be to the health or to the reputation or to the person of the injured party, shall not abate by reason of his death nor by reason of the death of the person against whom such cause of action shall have accrued; but in the case of the death of either or both, such cause of action shall survive to and in favor of the heirs and legal representatives of such injured party and against the person, receiver or corporation liable for such injuries, and his or its legal representatives; and so surviving such cause of action may be hereafter prosecuted in like manner and with like legal effect as would a cause of action for injuries to or destruction of personal property.

"2. The court or jury in every such action may give such damages, pecuniary and exemplary, as it shall deem fair and just. Every person entitled to maintain such action, and every person for whose benefit such action is brought, may prove his respective damages, and the court or jury may award such person that amount of damages to which it considers such person entitled, including damages for loss of probable future companionship, society and comfort."

imposition of them for such purpose is impossible in the case of a person deceased. But where the trespasser is still alive, as in the case at bar, there is no reason whatever why he should be exonerated because of the death of the one upon whom he has committed a trespass; for the punishment is imposed not to deter him from repeating his trespass as against the particular party assailed or injured, but to secure his general good behavior." *Id.* at 435.

With consistent logic, by the great weight of authority, punitive damage claims do not survive the death of the tortfeasor, and cannot be sought from the deceased tortfeasor's estate. *See, for example:* Barnes v. Smith, 305 F.2d 226 (10th Cir. 1962); Hayes v. Gill, 390 S.W.2d 213 (Tenn. 1965); Dalton v. Johnson, 129 S.E.2d 647 (Va. 1963); Morriss v. Barton, 190 P.2d 451 (Okl. 1947); Marcante v. Hein, 67 P.2d 196 (Wyo. 1937); Evans v. Gibson, 31 P.2d 389 (Cal. 1934); Braun v. Moreno, 466 P.2d 60 (Ariz.App. 1970); McAdams v. Blue, 164 S.E.2d 490 (N.C.App. 1968); Sears, Roebuck and Company v. Jones, 303 S.W.2d 432 (Tex.Civ.App. 1957). In Barnes v. Smith, cited above, a case arising, as this one, from a highway disaster involving the collision of two motor vehicles, the court noted that the rule just mentioned has been almost unanimously followed by courts considering the liability of a tortfeasor's estate.[5] One court has cogently stated the fundamental rationale for such holdings as follows: "Punitive damages are not to compensate an injured person for the loss sustained, but to punish a defendant for his conduct. [Citation omitted]. Since the deceased tortfeasor can in no way be punished by the award of punitive damages, we see no reason for allowing such damages to be assessed. When the reason for a rule ceases to exist, the rule itself is no longer of value and is extinguished by the disappearance of the reason." Braun v. Moreno, cited above, 466 P.2d at 62, 63. *Accord,* Hayes v. Gill, cited above. We are persuaded by this logic.

*A fortiori,* family members of a deceased tortfeasor cannot be vicariously liable for punitive damages under NRS 41.440.

---

[5]Although *Barnes* involved the interpretation of the New Mexico wrongful death statute permitting the jury to award "such damages, compensatory and exemplary, as they shall deem fair and just. . ." N.M. Stat. Ann. § 22–20–3, in our view, the rationale underlying the rule makes it equally applicable to our personal injury statute similarly permitting the jury to award "such damages, pecuniary and exemplary, as it shall deem fair and just." NRS 41.100.

That statute, by its express terms, only imposes vicarious liability upon other family members for "damages proximately resulting from . . . negligence or willful misconduct, . . ." Punitive damages do not so result. Such damages are raised, not as a proximate result of the wrongdoer's conduct, but rather, by law and are intended to punish the wrongdoer. *See* NRS 42.010.

Accordingly, the judgment in favor of respondents Fuetsch and Ruark is affirmed.

2. Although served with appellant's opening brief, and granted an extension of time to file his answering brief, respondent Anderson neither filed his brief nor tendered an explanation for his failure to do so. Under these circumstances, we elect, under NRAP 31(c), to treat such failure as a confession of error. Kitchen Factors, Inc. v. Brown, 91 Nev. 308, 535 P.2d 677 (1975). The judgment in favor of Anderson is reversed.

BATJER, C. J., and ZENOFF, MOWBRAY, and THOMPSON, JJ., concur.